UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                      20-cr-470 (PKC)

         -against-                                          OPINION AND ORDER

KENNETH WYNDER, JR. and
ANDREW BROWN,

                              Defendants.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

        This Opinion and Order describes a series of government failures that resulted in the non-production of hundreds of thousands of highly relevant documents that had been in the government's possession or control in some instances for more than a year. The series of failures was compounded by untrue representations made to the Court that induced it initially to deny a defense application for a continuance of the trial date. The three eve-of-trial productions amounted to approximately 40% of the government's entire production in this case. One production was of non-privileged documents from the annuity fund that was a victim of the defendants' alleged fraud (335,222 pages, 159,134 documents), a second was from the accounting firm providing services to the sponsor of the annuity fund (13,522 pages, 2,258 documents) and the third was of materials obtained as a result of a search warrant which long ago had been reviewed for privilege and responsiveness to the warrant (approximately 40,000 pages, 17,311 documents).

        Defendants do not assert that the prosecutors' conduct was in bad faith and the Court agrees. The government did not gain any advantage from its errors and omissions. The

prejudice to the defendants results principally from the need to grant a continuance of the trial date.

Prosecutors, like judges and defense counsel, make mistakes. It is inherent to the human condition. Thankfully, the course of events described in this Order is rare.[1]

But the errors in this case were recurrent and display a naive attitude on the part of the line prosecutors that all that should be done by paralegals and others was done and that they bear a very limited oversight role. For example, in one instance, a subpoenaed party sent a link to the lead prosecutor in November 2019 enabling a download of documents responsive to the subpoena. He then forwarded the link to a responsible member of the team. He assumed without checking that the forwarded email was received, opened, the responsive materials downloaded and later produced to defendants. The trial was set for July 13, 2022 and as of June 14, 2022, when the oversight was discovered by the lead prosecutor, the documents had never been downloaded or reviewed by anyone on the prosecution team. These audit documents could have contained important materials helpful to the prosecution or Brady material for the defendants. They were certainly materials covered by the prosecutors' obligations under Rule 16, Fed. R. Crim. P.

The Indictment, the Representations Regarding Discovery and the Trial Date

Defendant Kenneth Wynder, Jr. was indicted on September 8, 2020 of wire fraud and conspiracy defraud the United States in connection with his service as a fund administrator of the Law Enforcement Employees Benevolent Association ("LEEBA") Annuity Fund. (Doc

---

[1] But, regrettably, failures of this type do occur. See United States v. Jain, No. 19-cr-59 (PKC), 2020 WL 6047812 (S.D.N.Y. Oct. 13, 2020) (failure to produce approximately 5 terabytes of data on three electronic devices that had been known to prosecutors well over a year before produced but forgotten.). The facts in Jain did not occur during the tenure of the present United States Attorney or his senior staff.

6.) At a September 23, 2020 pre-trial conference, the lead Assistant United States Attorney assigned to the case described the anticipated discovery as "moderately voluminous" and expressed the hope that the bulk of discovery would be produced by the end of October 2020. (Sept. 23, 2020 Tr. (Doc 16) at 4.) "Obviously if it's not 100 percent at that time, we could set forth in a letter what we're still working on; for example, there are some electronic devices that are still being accessed, telephones." (Id.)

At a February 23, 2021 pre-trial conference, the government reported that discovery was substantially complete: "So except for the cell phones, discovery has been completed. And except for the documents that had to be reviewed for privilege, it was completed a couple of months ago." (Feb. 23, 2021 Tr. (Doc 31) at 4-5.) The parties expressed a preference for a trial date in the fourth quarter of 2021. (Id. at 8.)

A superseding indictment was filed on July 22, 2021 adding Andrew Brown, a financial services consultant and benefits coordinator for the LEEBA plan, as a defendant. (Doc 44.) At the July 29, 2021 arraignment of Brown, the Court asked the government to confirm the completion of discovery as to Wynder to which the lead AUSA responded: "We've provided all the discovery [that] we have at present, your Honor, but we are continuing to receive additional documents in order to make supplemental production." (July 29, 2021 Tr. (Doc 61) at 5.) As to Brown, after reciting certain discovery previously made, the AUSA stated: "We have all of the rest of the discovery that's been made in the case to date loaded and on a disk and ready to put in Fed Ex today." [2] (Id.)

At an October 14, 2021 pre-trial conference, the Court confirmed with the AUSA that the discovery production to Brown was complete except materials that came in from

---

[2] The transmittal of the FedEx package was subject to the entry of a Protective Order which the Court confirmed would be entered that day as to Brown. (Id.)

3

subpoena returns that were produced in a timely manner: "We produced . . . all discovery up till that point that day [i.e., July 29, 2021]. Since then there have been a couple of more productions, but it's all stuff we turn over as soon as we get it." (Oct. 14, 2021 Tr. (Doc 76) at 4.) Because of then-existing Covid-19 protocols, the Court could not assign a firm trial date but instructed counsel to set aside July 11 through August 5, 2022 for a trial and set a schedule on final pre-trial submissions. (Id. at 17-23.) On February 15, 2022, the Court confirmed that it would put the case down for a trial commencing July 11, 2022. (Feb. 15, 2022 Tr. (Doc 93) at 26.)[3] The Court subsequently made a modest adjustment to the commencement date moving it to July 13, 2022 to accommodate Brown's counsel who would be just ending his work on another trial. (Order of May 24, 2022; Doc 108.)

The Unraveling of the Government's Discovery Failures

With trial less than a month away, counsel for Wynder wrote to the Court on June 17, 2022 seeking a continuance of the July 13 trial, advising that the government had just produced a trove of documents, over 13,500 pages, from S.A. Koenig & Associates ("S.A. Koenig"), the auditors for LEEBA. According to defense counsel, "[t]he emails contain recorded statements of defendant Wynder and Brown, clearly materials discoverable under Rule 16." (Ltr. of June 17, 2022 (Doc 119) at 2.) The next day the government responded noting that Wynder has had "the great majority of the Government's discovery for more than 18 months[.]" (Ltr. of June 18, 2022 (Doc 123) at 2.) It further asserted that "a large number of the latest materials from Koenig CPAs were already obtained by the Government from other sources and were already produced by the Government in earlier productions, including records obtained

---

[3] The transcript bears the date February 2, 2022 but the Court, based upon minute entries and the Court's internal calendar, believes the conference actually took place on February 15, 2022.

4

through search warrants and other subpoenas, which included the entire contents of LEEBA's computer and office." (Id. at 1.) The government represented that it "produced [the S.A. Koenig documents] the same day it received those documents." (Id.)

In response to the exchange of letters, the Court Ordered as follows: "The government shall forthwith file with the Court a good faith estimate of (1) the quantity (by number or percentage) of the new production that had been previously produced and when that prior production was made, and (2) the length (in hours and minutes) of the recorded statements of either defendant and the subject matter of the statements." (Order of June 21, 2022; Doc 126.)

The government responded in a timely manner that about 70% of the S.A. Koenig production had been previously produced as part of earlier productions. "In Wynder's case they were produced in November and December 2020, while in Brown's case they were produced in July 2021." (Ltr. of June 21, 2022 (Doc 127) at 2.) The Court then denied Wynder's application to adjourn the trial writing as follows: "The Court has carefully reviewed the parties' submissions, including the government's June 21 response to the Court's inquiry. The Court is persuaded that the late production of Rule 16 material works no substantial hardship or prejudice to either defendant. The government's explanation is plausible, though highly regrettable, and does not bespeak of bad faith. The quantity of new material is in actuality much less than suggested by the defendants' initial reports." (Order of June 22, 2022; Doc 128.)

On June 27, 2022, the government disclosed "inaccuracies" in its letters of June 18 and June 21, 2022. (Ltr. of June 27, 2022 (Doc 130) at 1.) Specifically, the government acknowledged that it was not true that the defendants, or at least defendant Brown, had the vast majority of S.A. Koenig documents. (Id.) This is because Brown's counsel never received

5

355,000 pages of documents that the government neglected to produce nearly a year earlier.[4] (Id.) These LEEBA documents lay at the heart of the case. The government acknowledged this in opposing Brown's request to preclude the LEEBA documents from trial:

> "The materials at issue include evidence received from LEEBA, clearly one of the most important sources of documents in this case, and which constitute significant and important evidence in the Government's case-in-chief (and indeed may well include documents which the defense ultimately seeks to use in its case)."

(Ltr. of June 29, 2022 (Doc 133) at 5.)

The government's June 29 letter also informed the Court that it had never produced "a specific set of approximately 17,311 computer files, totaling approximately 40,000 pages, that were among the items seized in the course of a search warrant exercised at the premises of LEEBA on September 2019, and identified as responsive to that search warrant by Federal Bureau of Investigation ("FBI") personnel." (Id. at 4.) These materials—seized in 2019—had been reviewed for both responsiveness and privilege yet the output of that undoubtedly time-consuming review was never produced to defendants. (Id.) "The Computer Search Warrant Files—maintained in a separate location for downloads from the Relativity database—was overlooked and not included in that production." (Id.)

---

[4] The government's explanation for the failure to produce the highly important LEEBA documents, produced in response to grand jury subpoenas, was as follows:

> "the materials comprising the LEEBA Series, because of their large size, were not maintained on the Government's internal share drive and instead were maintained with an outside contractor in an online searchable database (the "Relativity database"). That contractor exported the LEEBA Series onto a hard drive for purposes of the Government's production of discovery in this matter. When Production 1 was produced to defendants Wynder and Whittick, a copy of that entire production was kept as a record on the Government's shared drive, with a single unfortunate exception. The LEEBA Series was simply too large to be maintained on the Government's share drive, and the LEEBA Series was maintained on a separate hard drive in the U.S. Attorney's office."

(Ltr. of June 29, 2022 (Doc 132) at 2.)
.

6

Also, the government's statement to the Court that it "produced [the S.A. Koenig documents] the same day it received those documents" (Ltr. of June 18, 2022 (Doc 123) at 1) was only true in the most literal sense and certainly was not the full story. An internal quote from a letter submitted to the Court by defense counsel revealed that the government had acknowledged that the government was sent a link to the documents in November 2019.[5] (Ltr. of June 17, 2022 (Doc 119) at 1-2.) As the Court learned at the June 30 hearing, the November 2019 link was circulated internally by the prosecution team but never accessed and there was no follow up.[6] The government realized the error on a re-check of its document productions and obtained a duplicate link from S.A. Koenig's lawyers and downloaded the documents on June 13, 2022. (June 30, 2022 Tr. (Doc 145) at 11.)

Remedy

Pursuant to the Due Process Act of 2020 and Rule 5(f), Fed. R. Crim. P., the Court delivered both oral and written orders advising the government of its obligations under Brady and Giglio and their so-called progeny and the consequences of violating those

---

[5] The November 2019 date does not appear in the government's correspondence with the Court but in an internal quote from a government letter cited by Wynder's counsel. (Ltr. June 17, 2022 (Doc 119) at 2.)

[6] The explanation given at the June 30 hearing was as follows:

> "We received an e-mail letter from Koenig's counsel with a disappearing link, a link that's temporarily available to download their 13,000 pages. We forwarded that to personnel whose function in these situations is to do two things. Number one, go into the link and download the 13,000 pages. And number two -- interrupting myself for a moment, this is still pre-indictment, so it's still prediscovery. So step number two was they were then supposed to take these 13,000 documents and put them into a file that we call grand jury subpoena returns. What apparently happened is that the personnel to whom we sent that link did not see the link, did not follow our instructions, and we failed to follow up as we should have to confirm that the link had been downloaded."

(June 30, 2022 Tr. (Doc 145) at 12-13.) At the June 30 hearing, the government did not dispute that the link was provided in November 2019. (Id. at 10-11.)

7

obligations. (Doc 18; Doc 48; Feb. 23, 2021 Tr. (Doc 31) at 2-3.) The late produced materials certainly fall within the government's obligations under Rule 16, Fed. R. Crim. P.[7] On February 15, 2022, wholly apart from the Rule 5(f) requirements, the Court again reminded the government of its obligations and specifically warned it of its obligations under Rule 16:

> THE COURT: And I give you a further oral admonition as to your responsibilities under Brady and Giglio and Rule 16. And do you acknowledge those obligations?
>
> [AUSA]: I do, your Honor, and the government does.
>
> THE COURT: And you understand the consequences of violating them?
>
> [AUSA]: Yes, your Honor.

(Feb. 15, 2022 Tr. (Doc 93) at 18.)

In deciding a sanction or remedy for a government failure to make timely production, the analysis should begin with any relevant rule providing a sanction.[8] Rule 16(d)(2) provides that "[i]f a party fails to comply with this rule, the court may:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
>
> (B) grant a continuance;
>
> (C) prohibit that party from introducing the undisclosed evidence; or
>
> (D) enter any other order that is just under the circumstances."

The materials now have been produced and the Court has granted a continuance of the trial, obviating the need to impose two of the enumerated sanctions.[9] Fed. R. Crim. P.

---

[7] There has been no evidentiary showing that they were Brady or Giglio materials, although that possibility exists.

[8] For a thoughtful discussion of sanctions against the government, see United States v. Aleo, 681 F.3d 290, 312 (6th Cir. 2012) (Sutton, J. concurring), quoted in G. Joseph, Sanctions: The Federal Law of Discovery Abuse, §26(D)(2) (5th Ed.)

[9] The Court adjourned the trial until March 6, 2023 and excluded time under the Speedy Trial Act without objection from either defendant. (June 30, 2022 Tr. (Doc 145) at 43-44.) Defendant Brown, whose lawyer is privately retained, notes that he did not join in defendant Wynder's original request to adjourn the trial and has received no benefit from the trial adjournment. Brown, Wynder and their families have the indictment hanging over their heads with no present means to vindicate their positions. Brown, who has retained counsel, may be exposed to higher fees

16(d)(2)(A) & (B). Evidentiary preclusion, Rule 16(2)(c), or an adverse inference charge, as suggested by defendants, may be appropriate for actions taken in bad faith, but does not fit these circumstances that amount to serious and repeated neglect. The Court cannot see any benefit to the government derived from this unseemly mess. There is no claim that prosecutors were trying to hide the ball and were caught only when the defendants unexpectedly decided to proceed to trial.

One requested item of relief sought by defendant Brown somewhat fits the circumstances. He notes that the government's Jencks Act material, 18 U.S.C. § 3500, would have been produced 14 days prior to the July 13 trial, i.e., on June 30, 2022. (Minute Entry of Feb. 23, 2021.) Brown asks that the government be required to produce the 3500 materials and a final non-amendable exhibit and witness list, no later than December 6, 2022. (Doc 138 at 1.) In its response, the government has consented to producing the "remaining Section 3500 material . . . , and good-faith drafts of exhibit and witness lists by December 6, 2022." (Doc 147 at 1.) The Court accepts the government's offer and will hold it to that commitment.

The Chief of the Criminal Division has advised the undersigned that the executive staff of the United States Attorney's Office ("USAO") is undertaking a review of ameliorative measures to reduce the risk of recurrence in other cases. The Court will hold the USAO to that undertaking and respectfully directs that a letter describing those measures be transmitted to the Court by October 14, 2022.

Finally, the Court reminds prosecutors appearing in this district of their responsibilities under the New York Rules of Professional Conduct. See, e.g., N.Y. Rules of

---

from the ramp up to trial followed by a continuance. Wynder's counsel will have similarly higher fees which will be paid out of Criminal Justice Act funds. Fee shifting against the government in a criminal case raises serious sovereign immunity concerns. See United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994).

Prof'l Conduct R. 1.3(b) ("A lawyer shall not neglect a legal matter entrusted to the lawyer."), R. 5.3(a) ("A lawyer with direct supervisory authority over a nonlawyer shall adequately supervise the work of the nonlawyer, as appropriate.")

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 19, 2022