# SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212 213-6996
fax 212 213-0849

Max Nicholas
tel 212-213-1715
mnicholas@spearsimes.com

June 24, 2022

*DE 129 terminated at final pretrial conference on February 23, 2023.  See transcript.*
*SO ORDERED.*
*Dated:  3/6/2023*

*P. Kevin Castel*
*United States District Judge*

**BY ECF**

The Honorable P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York  10007

> Re:  *United States v. Kenneth Wynder and Andrew Brown*,
>       S1 20 Cr. 470 (PKC)

Dear Judge Castel:

     Defendant Andrew Brown respectfully submits this supplemental motion *in limine* to preclude the Government from introducing at trial certain witness testimony that it raised for the first time on June 17, 2022, while maintaining the anonymity of the witness, in its reply brief in support of its own motions *in limine*.  (*See* Gov't Reply Br. at 4, ECF 122).  Despite relying on this putative witness testimony to support its *in limine* arguments, the Government has still not produced the relevant Section 3500 material to the defendants, nor has it identified the witness or even provided a witness list to the defendants.  For this reason, Mr. Brown's motion to exclude this witness testimony is necessarily incomplete, as he does not know the identity of the witness or the substance of his or her proposed testimony, and may need to be supplemented closer to trial.  Nevertheless, the Government's short description of the witness's testimony in its reply brief makes clear that this evidence should be excluded pursuant to Federal Rules of Evidence 403 and 404(b).

## Relevant Facts and Procedural History

     On May 6, 2022, the Government filed its motions *in limine*, which included a request to introduce evidence concerning Mr. Brown's receipt of compensation from an insurance provider ("Provider").  (*See* ECF 105, at 13-15).  At about the same time, the Government notified Mr. Brown by letter that it might "offer evidence of . . . [Mr.] Brown's receipt of compensation from . . . [the] Provider . . . for policies that he helped broker for LEEBA [the Law Enforcement Employees Benevolent Association, the union at issue in this case] and other labor unions."  (Gov't Ltr. dated May 5, 2022, attached hereto as Exhibit 1).  Mr. Brown opposed the

Government's motion to introduce the evidence of compensation from the Provider on Rule 402 and 403 grounds, and objected, pursuant to Rule 404(b), to the introduction of a particular document identified by the Government at Mr. Brown's request. (*See generally* Brown Opp. at 2-9, ECF 112; *see also id.* at 8 n.2).[1]

In reply, the Government for the first time stated it would seek to introduce evidence of "an internal investigation [by the Provider] regarding Brown's conduct with a lucrative non-LEEBA client whom he serviced through the Provider, and received commissions on their insurance policies from the Provider." (Gov't Reply Br. at 4).[2] The Government further explained, in a footnote, that it would introduce this evidence "through a witness (who will already be testifying about other topics) [hereinafter, "Witness-X"] who had regular contact with Brown, had personal knowledge of the investigation, and had personal knowledge of Brown's reaction to the investigation, as well as [of the Provider's recorded] . . . interview with Brown." (*Id.* at 4 n.2).

Based on the Rule 16 discovery in this case, it appears that this internal investigation related to  (the "Boston Investigation"). The Boston Investigation did not involve LEEBA. It also did not involve allegations similar to those in this case; the Boston Investigation had nothing to do with any annuity fund or fee withdrawals. And, crucially, at the conclusion of the Boston Investigation, (SDNY_00587375-377, attached hereto as Exhibit 2)).[3]

## Argument

The Boston Investigation evidence and Witness-X's testimony about the same is plainly barred by both Federal Rules of Evidence 403 and 404(b). This evidence's probative value is minimal at the very best and is outweighed by the prejudice and confusion it will cause at trial and by its cumulative nature. In addition, there is a distinct likelihood of its being

---

[1] The Government now states that it will not seek to introduce the document it identified for Mr. Brown. (Gov't Reply Br. at 5 n.3).

[2] To be clear, Mr. Brown maintains his opposition to the Government's proposal to introduce evidence of Mr. Brown's compensation by the Provider for all of the reasons stated in his opposition brief but files this supplemental motion to address the new evidence announced by the Government in its reply.

[3] The Government has designated this document, and much of the other Rule 16 material, Confidential pursuant to a Protective Order entered in this case. (*See* ECF 54). Accordingly, Mr. Brown respectfully requests that Exhibit 2 and the portions of this letter motion that refer to it be filed under seal, as well as those portions of the letter that refer to other documents designated Confidential. (*See id.* ¶ 4).

inappropriately construed by the jury as propensity evidence, requiring its exclusion pursuant to Rule 404(b). For all of these reasons, the Government's last-minute attempt to justify the introduction of this evidence is unsupported by the law, and it should be excluded at trial.

I.     <u>Evidence Concerning the Boston Investigation Is Precluded by Rule 403</u>

Pursuant to Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) ("[A] prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant. . . . Rule 403 requires the trial court to make a conscientious assessment of whether the probative value of the evidence on a disputed issue in the case is substantially outweighed by the prejudicial tendency of the evidence to have some other adverse effect upon the defendant."). Nearly all of the bases for exclusion of evidence enumerated in Rule 403 are implicated by the evidence the Government plans to elicit from Witness-X.

As a preliminary matter, the evidence is minimally relevant, if at all. The Government attempts to link this evidence and other evidence from the Provider to its theory of motive – that the alleged fraud committed by Mr. Brown was a result of his desire to maintain his business relationship with the Provider, with whom he worked on behalf of LEEBA and other, larger clients. The weaknesses of the Government's theory are set out in detail in Mr. Brown's opposition to the Government's motions *in limine*. (*See* Brown Opp. at 2-9). But, even if one credits the Government's attenuated theory of Mr. Brown's motive, the Government has not linked the Boston Investigation evidence to it. The Government has failed to elucidate the relevance of the Provider's investigation, which involved a different client of Mr. Brown's and ███████████████████████████████████████████████████████ to Mr. Brown's state of mind. (*Compare* Ex. 2 ██████████████████████████████████████) *with* Gov't Reply Br. at 3 (detailing actions the Government alleges Mr. Brown began taking in late April 2019 and forward to pay the Provider from the Annuity Fund)).[4] The Government, in short, provides no indication of its basis for asserting that the Provider's inquiry made Mr. Brown fear that his relationship with it was in jeopardy.

Even if the Boston Investigation evidence were probative of Mr. Brown's alleged motive, that minimal relevance is outweighed by the prejudicial, confusing, and cumulative nature of the evidence. Testimony concerning the Investigation is both prejudicial and confusing because it suggests wrongdoing by Mr. Brown, ████████████████████████████████████████ ████████████████. It also diverts the jury from the facts before it, focusing them on a different

---

[4] The Government also asserts that the Provider opened an investigation into Mr. Brown "less than a year before Brown asked Wynder to steal additional money from the Annuity Fund to pay the Provider." (Gov't Reply Br. at 4). The Government's produced documents contradict this assertion; ████████████████████████████████████████████████████████ ██████████████████████████████).

union and different, unproven conduct. Balancing the slight value, if any, this evidence will have for the jury's decision-making in this case, and the prejudice it will cause, leads to the clear conclusion that the evidence should be excluded. *See S.E.C. v. Badian*, 822 F. Supp. 2d 352, 366 (S.D.N.Y. 2011) (excluding evidence of previously dismissed criminal complaint over SEC's argument that the complaint demonstrated defendant's "consciousness of liability"); *see also Berkovich v. Hicks*, 922 F.2d 1018, 1023 (2d Cir. 1991) (upholding district court's exclusion of evidence concerning prior complaints against defendant where defendant had been exonerated in most of those instances because of the "potential for unfair prejudice," even though the evidence "arguably may have had some probative value in establishing a motive").

The Government suggests that a limiting instruction will automatically cure any prejudice caused by the introduction of this evidence. (*See* Gov't Reply Br. at 5). This is not so. In the case the Government itself cites for this proposition, the Second Circuit held that, as to two of the defendants, a limiting instruction was insufficient to address the prejudice caused by the introduction of an informant's statement. *United States v. Tussa*, 816 F.2d 58, 66-67 (2d Cir. 1987) ("The government next argues that even if the district judge erred in admitting the informant's statement, the error was cured by the district court's limiting instruction. . . . The admission of the evidence of the alleged informant's purported statement was extremely prejudicial to Patiwana and Zummo because it went to the heart of the relationships among the defendants. . . . We therefore hold that the admission of [that evidence] . . . was not harmless error with respect to Patiwana and Zummo."); *see also Figueroa*, 618 F.2d at 943 (2d Cir. 1980) ([W]hile [limiting instructions'] utility is not to be invariably rejected, neither should it be invariably accepted.").

Moreover, the Government's own brief suggests that it does not need to introduce evidence of the Boston Investigation at trial, in light of its other purported evidence. For example, the Government touts the "extraordinary messages" in its possession that "amply" and "repeatedly and directly" prove its theory of motive. (Gov't Reply Br. at 4). It is therefore difficult to understand why the Government requires this additional evidence that does not even involve LEEBA or the union's interactions with the Provider. Given that the evidence appears merely cumulative of that the Government intends to offer on motive, it should also be excluded. Fed. R. Evid. 403; *see also, e.g.*, *United States v. Gupta*, 747 F.3d 111, 132 (2d Cir. 2014) (finding that the district court did not abuse its discretion in limiting witness testimony that "would be 'cumulative,' given that the court had . . . admitted other evidence to the same effect").

II.     Evidence Concerning the Boston Investigation Is Also Barred by Rule 404(b)

Evidence of the Boston Investigation should also be excluded pursuant to Rule 404(b).[5] Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a

---

[5] The Government proposes to introduce the evidence concerning Mr. Brown's compensation by the Provider and the Boston Investigation as either direct evidence or as "other act" evidence pursuant to Rule 404(b). For the reasons set forth in Mr. Brown's opposition to the Government's motions *in limine*, this evidence cannot be considered direct evidence of the crimes charged. (*See* Brown Opp. at 6).

person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, if it is relevant, may be used for other purposes, like proving motive, "provided the probative value of such evidence is not outweighed by the risk of unfair prejudice." *United States v. Robinson*, 17-cr-249 (PAE), 2017 WL 4466616, at *2 (S.D.N.Y. Oct. 5, 2017) (citing Fed. R. Evid. 404(b)(2)). Nonetheless, the Government may not introduce evidence of extrinsic acts that is in fact "propensity evidence in sheep's clothing." *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009); *accord United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022).

Although the Government claims that the Boston Investigation is evidence of Mr. Brown's motive, the Government has not, as discussed above, established a link between the Investigation and any fear Mr. Brown had that his relationship with the Provider would come to an end. Instead, this evidence appears to in fact be classic propensity evidence that could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (discussing propensity evidence as one of the improper grounds on which a jury might base its verdict).

███████████████████████████████████████████, a jury could easily – though incorrectly – assume that there is some impropriety in Mr. Brown's business dealings that makes him more likely to have committed the crimes with which he is charged in this case. Under Rule 404(b), the jury should not be presented with evidence that appears tailor-made to arouse such improper assumptions, and, accordingly, evidence of the Boston Investigation should be excluded. *See, e.g., United States v. Manafzadeh*, 592 F.2d 81, 89 (2d Cir. 1979) (admission of other act evidence was reversible error where "[i]t served to direct the jury's attention away from the offenses charged to a crime not charged which was not relevant to any issue in contention at trial, thus giving the jury the opportunity to draw the impermissible inference that because the defendant apparently acted unlawfully on a much later occasion and in a different way, he must have committed the earlier unlawful acts alleged in the present case"); *United States v. Levin*, 15-cr-101 (KBF), 2016 WL 8711458, at *9 (S.D.N.Y. Jan. 8, 2016) (prohibiting the Government from using defendant's prior acts "to pursue a 'once a fraudster, always a fraudster' theory").

\* \* \*

For the above reasons, Mr. Brown respectfully requests that the Court preclude the Government from introducing the evidence concerning the Boston Investigation that it first described in its June 17 reply brief.

Respectfully submitted,

/s/

Max Nicholas
Reed M. Keefe

*Attorneys for Defendant Andrew Brown*