UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                      20-cr-470 (PKC)

    -against-               OPINION
                        AND ORDER

KENNETH WYNDER, Jr. and
ANDREW BROWN,

        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    A grand jury returned an indictment charging Andrew Brown and Kenneth Wynder, Jr. with conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1343, 2. The indictment also charged Wynder with tax evasion and conspiracy to defraud the United States. At the close of evidence in the defendants' trial, both defendants moved for a judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., and the Court reserved decision on the motions. The jury convicted the defendants on all counts. Brown has now renewed his motion for a judgment of acquittal, and in the alternative, moved for a new trial pursuant to Rule 33(a), Fed. R. Crim. P. Brown's motions are denied.

I. <u>Motion for a Judgment of Acquittal.</u>

    Rule 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A defendant challenging a jury's verdict based on allegedly insufficient evidence bears a heavy burden. <u>United States v. Aguilar</u>, 585 F.3d 652, 656 (2d Cir. 2009). The Court reviews the evidence in the light most favorable to the prosecution, and draws all reasonable

inferences in its favor. Id. The defendant must then show that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Brown was convicted of conspiracy to commit wire fraud (Count One) and substantive wire fraud (Count Two). The government presented evidence at trial that over a seven-year period Wynder and Brown improperly withdrew $529,000 from the annuity fund they managed. The annuity fund was a benefit offered to members of the Law Enforcement Employees Benevolent Association ("LEEBA")—a union representing law enforcement personnel in New York City (the "City"). (Tr. 192). The annuity fund was funded by contributions from New York City and for the sole benefit of the LEEBA's members, not the union itself; indeed, prospective union members were told by the union that "Your Annuity is YOURS: Your City-Funded LEEBA Annuity belongs to YOU, not the union." (GX 2003, at 5). Many of the withdrawals made by Wynder and Brown, however, were to pay the union's expenses and not expenses related to the operation of the annuity fund. (GX 2208, at 1; GX 418-434).

The wire fraud statute criminalizes using a wire communication to effectuate "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. The elements of wire fraud are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of . . . wires to further the scheme." United States v. Calderon, 944 F.3d 72, 85 (2d Cir. 2019) (internal quotation omitted). In his motion for a judgment of acquittal, Brown does not contest that the government presented sufficient evidence that money was the object of the scheme and that he used wires to further the scheme. He primarily contends that the government presented

insufficient evidence of the scheme to defraud element of the offense because it failed to show that Brown possessed a fraudulent intent. The "gravamen of the [wire fraud] offense" is a scheme to defraud. United States v. Greenberg, 835 F.3d 295, 305 (2d Cir. 2016) (internal quotation omitted). The government's proof of a scheme to defraud in turn "demands a showing that the defendant possessed a fraudulent intent." Id. at 305-06 (internal quotation omitted). The Court concludes that a rational trier of fact could have found beyond a reasonable doubt that Brown acted with an intent to defraud, and thus denies Brown's motion for a judgment of acquittal.

The evidence showed that the defendants participated in a scheme to defraud the annuity fund by knowingly making false statements to improperly withdraw money from the fund. (Tr. 78). Wynder and Brown were both "plan administrators" for the annuity fund. (Tr. 78-79). Wynder also served as the president of LEEBA and a member of the annuity fund's Board of Trustees. (Tr. 43, 335-37). Brown owned and operated a financial services firm, Strategic Planning Services, that served as LEEBA's benefits coordinator. (Tr. 228; GX 311). Brown received commissions for brokering insurance contracts between LEEBA and insurers for the members' insurance, (Tr. 303-04), and commissions based on the annuity fund's performance. (Tr. 136).

The City funded the annuity fund pursuant to an agreement between the City and LEEBA. (Tr. 193). An employee with the City's Office of the City Comptroller explained that the agreement between the City and LEEBA required that the City's contributions to the annuity fund be used exclusively for the members' annuity accounts with an exception for reasonable expenses to administer the daily operations of the fund. (Tr. 202).

LEEBA employed Ascensus, a retirement plan recordkeeper, to maintain the annuity fund's records and serve as the fund's custodian. (Tr. 77, 99). The City sent its annuity fund contributions to Ascensus directly, and Ascensus required the completion of a "special authorization form" before LEEBA could withdraw any money from the annuity fund. (Tr. 112-13). The form required the plan administrator to state the purpose of the withdrawal. (Tr. 112-13). Ascensus permitted LEEBA to withdraw money from the fund to pay for only administrative fees—fees to an auditor of the fund, fees to a lawyer to ensure the fund's compliance with governing regulations, or other fees that "keep the lights on." (Tr. 113). Ascensus would not permit a withdrawal for a purpose unrelated to the administration of the annuity fund. (Tr. 113). From 2012 to 2019, LEEBA withdrew $529,000 from the annuity fund using 17 special authorization forms. (Tr. 587-88). Each special authorization form stated that the purpose of the withdrawal was to pay for a permissible administrative fee. (Tr. 587). The forms were completed by Brown or his employees and then signed by Wynder. (Tr. 175-77).

The government presented sufficient evidence from which a reasonable trier of fact could have concluded that Brown possessed a fraudulent intent because he knew the withdrawals were not to pay the fund's administrative fees yet withdrew the money anyway. While "direct proof of [the] defendant's fraudulent intent is not necessary," United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999), the government offered direct evidence of Brown's fraudulent intent in this case. The evidence showed that, in one instance, Brown pressured Wynder to make a fraudulent withdrawal from the annuity fund to pay overdue life insurance premiums to The Standard Life Insurance—an insurance company LEEBA contracted with—in order to protect Brown's commissions. He emailed Wynder stating that he did "a lot of business with The Standard" and "really thought that the distributions made from the annuity fund were

going to pay this." (Tr. 572). Later, he sent Wynder a text message stating that he had "a form ready to go out to Ascensus for an admin withdrawal." (Tr. 573). He told Wynder that "39k squares up the life and resolves that problem," and he would "write 'audit' as [the] reason." (Tr. 574). He then messaged Wynder again asking if he could "do an admin withdrawal from Ascensus to pay The Standard." (Tr. 574). LEEBA then withdrew $40,000 from the annuity fund, and Brown listed "administrative management" as the reason for the withdrawal on the special authorization form. (GX-432). Soon after, LEEBA paid its $39,000 delinquent payment to The Standard.[1] (Tr. 575).

The evidence also demonstrated that, on another occasion, Wynder told Brown he needed a withdrawal from the annuity fund, and Brown replied, "you need to let me know how much and what we need to write for a purpose." (Tr. 562-63; GX 1306, at 91). Wynder told Brown he needed $60,000 and to write the "janus decision" as the purpose.[2] (Tr. 563). Brown then completed the special authorization form, but he wrote "administrative management/cost" for the purpose. (Tr. 563).

The government thus presented direct evidence of two occasions where Brown intentionally put a permissible administrative expense as the reason for the withdrawal instead of the true reason for the withdrawal. A reasonable jury could conclude that Brown purposefully and with the intent to deceive made a false statement on the special authorization forms to access the money in the annuity fund, and he twice withdrew money from the annuity fund knowing his withdrawals were fraudulent.

---

[1] Since LEEBA was the collective bargaining unit and separate from the City-funded annuity fund, its insurance costs were not directly associated with expenses of the annuity fund.
[2] This was a reference to Janus v. American Federation of State, County, & Municipal Employees, Council 31, 585 U.S. —, 138 S. Ct. 2448 (2018), a decision that permitted members of a public-sector collective bargaining unit to opt out of paying union membership dues. It was unrelated to the operation of the annuity fund.

Brown alleges that other evidence shows that he did not act with a fraudulent intent: he was not warned the withdrawals were improper, he did not have a financial incentive to defraud the annuity fund, and he did not conceal the annuity fund withdrawals. (ECF 200, at 10-12). The government presented evidence rebutting these specific points. Brown was an experienced financial professional, (GX-1402), and the jury was entitled to draw the common-sense inference that had Brown believed the withdrawals were proper, he would not have written false reasons for the withdrawals on the form. Similarly, the government presented evidence that Brown was incentivized to defraud the fund because he earned commissions on the insurance contracts that he brokered with The Standard Life Insurance and did "a lot of business" with them. (Tr. 303-04, 572). The government also presented evidence that Brown concealed the annuity fund withdrawals; when a LEEBA member asked Brown "[w]hat happened to my money," Brown told the member the withdrawals were a loan to LEEBA to fight "upcoming legal battles." (Tr. 624-25). Brown's argument thus asks the Court to determine that the evidence allegedly showing he lacked the requisite intent outweighs the opposing evidence presented by the government. In reviewing a motion for acquittal, however, "the [C]ourt must be careful to avoid usurping the role of the jury." Guadagna, 183 F.3d at 129. Indeed, the Court is not permitted to substitute its views on the relative weight of the evidence for that of a jury. United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). Because the government presented sufficient evidence from which a reasonable juror could find that Brown possessed a fraudulent intent, the Court will not set aside the jury's determination on the relative weight of the evidence. See Calderon, 944 F.3d at 90.

Brown also argues that his conviction for wire fraud conspiracy "cannot stand" because the government did not present sufficient evidence establishing his "awareness of the

- 6 -

general nature and extent of the charged conspiracy." (ECF 200, at 13). A reasonable juror could conclude that Brown and Wynder entered into an implicit agreement with the known object of fraudulently obtaining money from the annuity fund. The government presented evidence that Brown urged Wynder, and Wynder agreed, to cause money to be improperly withdrawn from the annuity fund using a false stated purpose. Similarly, after Wynder directed Brown to withdraw money from the annuity fund and gave him a reason for the withdrawal that Ascensus would not have approved, Brown misrepresented the purpose of the withdrawal as administrative expenses on the special authorization form. The Court concludes that the evidence was sufficient to sustain Brown's conspiracy to commit wire fraud and wire fraud convictions, and Brown's Rule 29 motion for a judgment of acquittal is denied.

II. Motion for a New Trial

While "a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29," such discretion should be exercised "sparingly." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." The "ultimate test" for a Rule 33 motion is "whether letting a guilty verdict stand would be a manifest injustice." United States v. Landesman, 17 F.4th 298, 330 (2d Cir. 2021) (internal quotations omitted).

Brown does not raise any additional arguments explaining why he is entitled to a new trial. As discussed above, the government presented sufficient evidence that Brown committed both offenses, and the Court declines to conclude that the evidence weighs so heavily against the jury's verdict that it would be "manifest injustice" to let the guilty verdict stand. Brown's Rule 33 motion is denied.

Conclusion

Brown's motion for a judgment of acquittal pursuant to Rule 29 or, alternatively, for a new trial pursuant to Rule 33 is DENIED. The Clerk is respectfully requested to terminate the motion (ECF 200).

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 11, 2023